Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000349
28-JUN-2018
10:05 AM

NO. CAAP-17-0000349

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JOHN C. HORVATH, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTA-16-03579)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., Leonard and Reifurth, JJ.)

Defendant-Appellant John C. Horvath (**Horvath**) appeals from the "Notice of Entry of Judgment and/or Order and Plea/Judgment" (**Judgment**) entered on April 3, 2017 in the District Court of the First Circuit, Honolulu Division (**district court**).[1] After a bench trial, the district court found Horvath guilty of operating a vehicle under the influence of an intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) §§ 291E-61(a)(1) and (b)(1) (Supp. 2017).[2]

_____

[1] The Honorable Lanson K. Kupau presided.

[2] HRS § 291E-61(a)(1) provides, in relevant part:

> **§291E-61 Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a
>
> (continued...)

On appeal, Horvath contends that the district court erred by: (1) failing to administer a proper Tachibana colloquy; and (2) denying Horvath's motion to suppress certain statements because they were made without prior Miranda warnings. Horvath additionally argues that, without the improperly admitted evidence described in his Motion to Suppress, there would not have been substantial evidence to support his conviction.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant legal authorities, we resolve Horvath's points of error as follows and affirm.

**(1) Ultimate Tachibana Colloquy.**

Prior to the State calling its first witness, the district court offered its prior-to-trial advisement of Horvath's right to testify or not testify:[3]

> THE COURT: Okay. Also too I need to advise you that you have the constitutional right to testify or not testify in your own behalf. No one can force you to make that decision. That decision is yours and yours alone to make. If you decide to testify on your own behalf, then you'll be placed under oath and subject to cross-examination by the prosecutor. Do you understand that?
>
> [HORVATH]: Yes, I do.
>
> THE COURT: If you decide not to testify, then that's perfectly fine. This court cannot and will not hold that against you or have any negative inference made against you as a result of your decision not to testify. The court will simply make a decision based upon the evidence presented without your testimony. Do you understand that?
>
> [HORVATH]: Yes, I do, Your Honor.
>
> THE COURT: At a later point in time the court's going to discuss this matter with you again. At that point in time I'll go ahead and give you the opportunity to speak to your attorney and then let me know what your decision is.

---

(...continued)
vehicle:
(1)     While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

[3]     See State v. Lewis, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000).

Okay?

    [HORVATH]: Thank you. Yes.

    THE COURT: Do you have any questions for me before we start?

    [HORVATH]: No, Your Honor.

    THE COURT: Okay. Thank you very much. If you would please have a seat.

Following the State's case-in-chief, the defense indicated that it had no witnesses. The district court administered the ultimate <u>Tachibana</u> colloquy,[4] stating:

    THE COURT: All right.

    And then, Mr. Horvath, as I had mentioned previously, you have the constitutional right to testify or not testify in your own behalf. That decision is yours and yours alone to make. Uh, at this point in time if you choose to testify on your own behalf, you'll be subject to cross-examination by the State. Do you understand that?

    [HORVATH]: Yes, Your Honor.

    THE COURT: If you choose not to testify, that's perfectly fine. This court cannot and will not hold that against you or have any negative inference as the result of your decision not to testify. Do you understand that?

    [HORVATH]: Yes, Your Honor.

    THE COURT: Okay. Do you have any questions for the court?

    [HORVATH]: No, Your Honor.

---

[4] Trial courts are required to "conduct an 'ultimate colloquy' in cases in which a defendant has not testified prior to the close of the case." <u>State v. Monteil</u>, 134 Hawai'i 361, 370, 341 P.3d 567, 576 (2014). <u>Tachibana</u> provided trial courts with the following specific guidance for the "ultimate colloquy" to ensure that defendants are informed of their rights regarding their testimony:

    [H]e or she has a right to testify, that if he or she wants to testify that no one can prevent him or her from doing so, and that if he or she testifies the prosecution will be allowed to cross-examine him or her. In connection with the privilege against self-incrimination, the defendant should also be advised that he or she has a right not to testify and that if he or she does not testify then the jury can be instructed about that right.

<u>Tachibana v. State</u>, 79 Hawai'i 226, 236 n.7, 900 P.2d 1293, 1303 n.7 (1995) (original brackets omitted) (quoting <u>State v. Neuman</u>, 371 S.E.2d 77, 82 (1988)).

> THE COURT: Okay. Now I'll give you an opportunity to discuss this matter with your counsel, and then you can let me know what your decision is.
>
> [HORVATH]: Uh, I choose not to testify.
>
> THE COURT: Okay. And is anyone forcing you, threatening you, or promising you anything in exchange for your decision not to testify?
>
> [HORVATH]: No, Your Honor.
>
> THE COURT: You [sic] doing this of your own free will?
>
> [HORVATH]: Yes, Your Honor.
>
> THE COURT: All right. Are you currently under the influence of any drug, medication, alcohol, suffering from or being treated for any mental illness that would affect your ability to think clearly today?
>
> [HORVATH]: No, Your Honor.
>
> THE COURT: Your mind is clear?
>
> [HORVATH]: Yes, sir.
>
> THE COURT: Okay. Thank you very much.

On appeal, Horvath first contends that the district court's ultimate Tachibana colloquy was "actually a litany of rights/advisements" in which the court lumped all the rights and advisements associated with the right to testify into a single question, "Do you understand that?" and then did the same with the rights and advisements associated with the right not to testify. We conclude the district court's Tachibana colloquy was not deficient.

"[A] colloquy is an oral exchange in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights." State v. Pomroy, 132 Hawai'i 85, 93, 319 P.3d 1093, 1101 (2014) (quoting State v. Han, 130 Hawai'i 83, 90, 306 P.3d 128, 135 (2013)) (internal quotation marks omitted). The Hawai'i Supreme Court held in Pomroy that the district court's recitation of a litany of rights, coupled with the district court's failure to "ascertain that [defendant] understood what it had told him, or, more importantly, understood his right to testify (or not testify)" did not amount to a true

4

colloquy. 132 Hawaiʻi at 93-94, 319 P.3d at 1101-02.

Recently, in State v. Celestine, 142 Hawaiʻi 165, 415 P.3d 907 (2018), the Hawaiʻi Supreme Court stated:

> To accomplish the purposes of a true colloquy, we have suggested that the trial court engage in a verbal exchange with the defendant at least twice during the colloquy in order to ascertain the defendant's "understanding of significant propositions in the advisement." The first time is after the court informs the defendant of the right to testify and of the right not to testify and the protections associated with these rights. The purpose of this exchange is for the court to ascertain the defendant's understanding of these important principles.
>
> The second time we suggested a verbal exchange should occur is after the court indicates to the defendant its understanding that the defendant does not intend to testify. This inquiry enables the court to determine whether the defendant's decision to not testify is made with an understanding of the principles that have been explained to the defendant. As part of this inquiry, the trial court elicits responses as to whether the defendant intends to not testify, whether anyone is forcing the defendant not to testify, and whether the decision to not testify is the defendant's.

Id. at 170-71, 415 P.3d 912-13 (citations and footnote omitted) (emphasis added).

In this case, the district court did not simply recite a litany of rights during the ultimate colloquy with Horvath. Instead, the district court advised Horvath of his rights and during that process, also engaged in several verbal exchanges with Horvath consistent with Celestine. We thus conclude that the district court engaged in a true colloquy with Horvath.

We note that the district court did not explicitly advise Horvath that "if he [] wants to testify that no one can prevent him [] from doing so[.]" See Tachibana, 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7 (citation omitted). Rather, the district court advised Horvath that his decision whether to testify "is yours and yours alone to make" and also asked Horvath, "is anyone forcing you, threatening you, or promising you anything in exchange for your decision not to testify?" Given the totality of the circumstances, we conclude that the colloquy in this case was not deficient.

The constitutional right to testify is violated when the

<u>Tachibana</u> colloquy is inadequate to provide an "objective basis" for finding the defendant "knowingly, intelligently, and voluntarily" relinquished his or her right to testify. In determining whether a waiver of the right to testify was voluntarily and intelligently made, this court looks to the totality of the facts and circumstances of each particular case.

<u>Celestine</u>, 142 Hawai'i at 171, 415 P.3d at 913 (citations omitted). In <u>Celestine</u>, the following colloquy transpired between the defendant and the district court:

THE COURT: Okay. Just in caution, okay, I had explained to you, okay, on the 12th that you had the right to testify and the right to remain silent, okay. They call this your <u>Tachibana</u> rights. It's based on a case law that the appellate court found that the trial court needed to inform you of your rights, okay. If you chose not to testify, the Court could infer no guilt because of your silence; basically you would be invoking your Fifth Amendment right against self-incrimination. Okay. On the other hand, if you do wish to testify, you need to be sworn in, you also will be subject to cross-examination by the State's attorney.

Okay. Your attorney just indicated to the Court that you will not be testifying. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Is anybody forcing you not to testify?

THE DEFENDANT: No, sir.

THE COURT: Okay. It's your own decision?

THE DEFENDANT: Yes, sir.

THE COURT: Okay, very good, why don't you have a seat. . . . .

<u>Id.</u> at 175, 415 P.3d at 917. The supreme court held that Celestine's response of "Yes, sir" to the court's question regarding her attorney's indication to the court did not indicate whether she was expressing that she did not wish to testify or merely confirming that her attorney had just told the court she would not be testifying. <u>Id.</u> at 172, 415 P.3d at 914 (citing <u>Han</u>, 130 Hawai'i at 91, 306 P.3d at 136 (holding that although the defendant responded "Yes" to the court's statement that "[t]he decision not to testify is yours and yours alone after you have discussed the matter with your attorney," it was unclear if the defendant was responding "Yes"--that he understood the

decision was his alone, or "Yes"--that he had discussed the matter with his attorney)).

The supreme court further held that Celestine's "No" response to the court's inquiry of whether anyone was forcing her not to testify did not indicate that she understood she had a constitutional right to testify, only that no one was forcing her not to testify. Id. (citing Han, 130 Hawai'i at 91, 306 P.3d at 136 (holding that the defendant's "No" response to the court's inquiry as to whether anyone was threatening or forcing him not to testify did not demonstrate his understanding of his right to testify)). Further, the final question ("It's your own decision?") did not cure the inadequacy in the court's colloquy as the court "did not inquire into other matters of constitutional magnitude." Id. (citations omitted). Therefore, the district court did not engage in a sufficient colloquy with Celestine to ascertain whether her waiver of the right to testify was based on her understanding of the principles related by the district court, and as such, the record did not demonstrate that Celestine's waiver of the right to testify was knowingly, intelligently, and voluntarily made. Id.

In the instant case, the district court advised Horvath in pertinent part: "you have the constitutional right to testify or not testify in your own behalf. That decision is yours and yours alone to make." (Emphasis added). The district court asked Horvath, "[d]o you understand that?" Horvath replied that he understood. After Horvath stated "I choose not to testify" (emphasis added), the district court asked Horvath "is anyone forcing you, threatening you, or promising you anything in exchange for your decision not to testify?" to which Horvath responded, "[n]o, Your Honor." The district court then asked "[y]ou doing this of your own free will?" to which Horvath replied, "[y]es, Your Honor." Together, the district court's advisements and exchanges with Horvath objectively indicate that Horvath was aware that he had a right to testify and that no one could prevent him from doing so.

7

Based on the totality of the circumstances, there is an objective basis for determining that Horvath knowingly, intelligently, and voluntarily relinquished his right to testify.

**(2) Miranda Warning.** Horvath next contends that his statements and non-verbal communication after being placed in "custody" should have been suppressed. Horvath thus asserts that the district court erred in not suppressing evidence related to: his agreement to participate in the Standard Field Sobriety Tests (**SFSTs**), his answers to the medical rule-out questions, his statements that he understood Officer Thomas Billins' (**Officer Billins**) instructions on the SFSTs, and his performance on the SFSTs. Horvath does not dispute, however, that he was initially pulled over pursuant to a valid traffic stop after Officer Lordy Cullen (**Officer Cullen**) observed his vehicle weaving on the freeway and straddling two lanes on Kinau Street for about ten seconds after exiting the freeway.[5]

At trial, the prosecution called Officer Cullen and Officer Billins as its witnesses.

Officer Cullen testified that, on October 1, 2016, at about 3:10 a.m., he effected a traffic stop of a car being driven by Horvath. At that time, Horvath's car was traveling on the H-1 freeway, "weaving in a snakelike motion" between two lanes. Officer Cullen followed Horvath for about half a mile, until Horvath exited onto Kinau Street, at which point Officer Cullen observed Horvath straddling two lanes for about ten seconds. After activating the blue lights and siren on his patrol car, Officer Cullen directed Horvath to pull over, and Horvath complied. Officer Cullen explained to Horvath why he was

---

[5] Horvath cites State v. Tsujimura, 140 Hawai'i 299, 400 P.3d 500 (2017), for the proposition that his post-seizure statements and non-verbal communicative responses were obtained in violation of his right to remain silent. In Tsujimura, the supreme court held that a person has the right to remain silent before an arrest is made. Id. at 310-11, 400 P.3d at 511-12. Tsujimura, however, is distinguishable because, in that case, the issue was whether the defendant's pre-arrest silence could be used against him substantively as an implication of guilt, not whether Miranda warnings were required. Id. at 311-14, 400 P.3d at 512-15.

stopping him and subsequently asked for his license, insurance, and registration. Although Horvath retrieved his license without delay, he had trouble locating the other documents. Horvath gave Officer Cullen three expired insurance cards and two expired registration documents before presenting current versions.

Officer Cullen further testified that, while conversing with Horvath, he noticed a strong odor of a consumed alcoholic beverage emanating from Horvath's breath, that Horvath's eyes were red, watery, glassy and bloodshot, that his face was flushed pink, and that his speech was slurred. Officer Cullen returned to his patrol car, at which point Officer Billins arrived. Officer Cullen instructed Officer Billins to administer the SFSTs to Horvath.

Officer Billins testified that, prior to administering the SFSTs, he asked Horvath "medical rule-out questions" to determine if Horvath had any medical conditions that would affect his ability to perform the tests. Officer Billins then asked Horvath whether he was taking medication, if he has seen an eye doctor or a dentist recently, if he is diabetic or epileptic, if he has a fake or glass eye, and if he has any speech impediments. Officer Billins testified that Horvath answered "no" to all of these questions.

Officer Billins further testified regarding his observations of Horvath's performance during the SFSTs. During the horizontal gaze nystagmus test, Horvath swayed from side to side about two inches as he stood. During the walk-and-turn test, Horvath missed some heel-to-toes on the first nine steps, stumbled when he turned around, and took sixteen rather than the instructed nine return steps. During the one-leg stand test, Horvath failed repeatedly to keep his foot six inches above the ground as instructed, could not keep his arms by his sides as instructed, and swayed his body throughout the test. Horvath was arrested after completing the SFSTs.

A defendant is not in custody for purposes of Miranda merely because he or she has been pulled over pursuant to a valid

traffic stop. State v. Kaleohano, 99 Hawai'i 370, 376, 56 P.3d 138, 144 (2002); see also Berkemer v. McCarty, 468 U.S. 420, 437-39 (1984) (holding that persons temporarily detained pursuant to ordinary traffic stops are not in custody for purposes of Miranda). Here, Horvath was not in custody merely by virtue of being pulled over during a traffic stop. Further, based on the totality of the circumstances, Horvath was not subjected to custodial interrogation prior to or while performing the SFSTs, and thus, he was not required to be advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). See also State v. Kahana, No. CAAP-17-0000359, 2018 WL 2316511, at *1-2 (Hawai'i App. May 22, 2018); State v. Uchima, No. CAAP-17-0000081, 2018 WL 898225, at *1-2 (Hawai'i App. Feb. 15, 2018).

In order for a defendant's statements to be admitted into evidence, it need not be shown that the defendant was advised of his or her rights, if the defendant's statements are not the product of custodial interrogation. Kaleohano, 99 Hawai'i at 377-78, 56 P.3d at 145-46. As stated above, Horvath was not in custody and, thus, he was not subjected to custodial interrogation which required advisement of his Miranda rights. Therefore, his statements to Officer Billins were admissible.

Further, admission of Horvath's performance on the SFSTs did not violate his right against self-incrimination. The right against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against him. State v. Wyatt, 67 Haw. 293, 302, 687 P.2d 544, 551 (1984). In Wyatt, the supreme court stated that observations of a defendant's performance on field sobriety tests were an exhibition of physical characteristics of coordination. Id. at 303, 687 P.2d at 551. Thus, the Wyatt court held that since the performance on field sobriety tests was not communication nor testimony, the trial court did not err by refusing to suppress the field sobriety test observations. Id. at 301-03, 687 P.2d at 550-51.

10

For these reasons, the district court did not err in denying Horvath's motion to suppress.

**(3) Sufficiency of the Evidence.** Horvath additionally contends that, absent the erroneously admitted statements and observations of his performance on the SFSTs, there was no substantial evidence to support his conviction. However, we have concluded that the district court did not err by refusing to suppress evidence of the police officers' observations of Horvath's actions and the statements made by Horvath.

The evidence in this case was sufficient to support Horvath's conviction.

Therefore, the District Court of the First Circuit, Honolulu Division's "Notice of Entry of Judgment and/or Order and Plea/Judgment," entered on April 3, 2017, is affirmed.

DATED: Honolulu, Hawai'i, June 28, 2018.

On the briefs:

Alen M. Kaneshiro,
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

11